## GOVERNMENT OF THE VIRGIN ISLANDS
### v.
## MUJAHID, ABDUL aka BENNETT, GEORGE ABDUL MUJAHID, Appellant

[990 F.2d 111]

No. 92-7126

United States Court of Appeals

for the Third Circuit

April 5, 1993

285

STYLISH E. WILLIS (Argued), Charlotte Amalie, St. Thomas, V.I., *for appellant*

TERRY M. HALPERN, United States Attorney; AUDREY THOMAS-FRANCIS (Argued), Assistant United States Attorney, Charlotte Amalie, St. Thomas, V.I., *for appellee*

BEFORE: BECKER, COWEN and ROTH, *Circuit Judges*

## OPINION OF THE COURT

COWEN, *Circuit Judge*

Defendant Abdul Mujahid was convicted of two counts of rape in the first degree. During his trial, the government referred to a co-defendant's guilty plea in its opening statement and later introduced evidence of that guilty plea. The district court never instructed the jury that a co-defendant's guilty plea cannot be considered substantive evidence of the defendant's guilt. Because Mujahid's trial counsel failed to object, we can reverse his conviction only if the district court committed plain error under Fed. R. Crim. P. 52(b). We conclude that the admission of the co-defendant's guilty plea without a cautionary instruction was not plain error on the facts of this case. We therefore will affirm the conviction.

## II.

On September 25, 1991, Mujahid was charged by information with two counts of rape in the first degree under V.I. Code Ann. tit.

14, § 1701(2), (3) (Supp. 1990). The government alleged that he forcibly raped Mary Joe Bernard twice on September 18, 1991. He pled not guilty to both charges of rape. The same information charged Claudette Fielteau, Mujahid's girlfriend, with one count of rape in the first degree under sections 1701(2) and (3) for allegedly assisting him during the first rape. On December 9, 1991, she entered into a plea agreement with the government, whereby she agreed to plead guilty to aiding and abetting an unlawful sexual contact in the first degree under V.I. Code Ann. tit. 14, § 1708(1) (Supp. 1990) and to testify against Mujahid.

The trial occurred on January 22 and 23, 1992. Bernard testified that she knew Mujahid and Fielteau, who were living together. On the night of September 18, 1991, they picked her up in a two-door Ford Bronco. Mujahid was the driver, Fielteau was in the front passenger seat, and Bernard was in the back seat. Mujahid drove them to a dock. No other people or automobiles were nearby. Mujahid accused Bernard of "making a move" on Fielteau. App. at 35. Mujahid got out of the vehicle and ordered Bernard to get out. When she did so, Mujahid grabbed her and shoved her against the vehicle. He then took her to the end of the dock and threatened to throw her in the water. He brought her back to the vehicle, shoved her against it, and released her. She started to run away, but Mujahid drove alongside of her in his vehicle and threatened to kill her if she did not get in. She re-entered the vehicle and sat behind Fielteau.

Bernard testified that Mujahid then drove to an isolated beach and again accused her of having "made a move on his woman." App. at 39. He climbed into the back seat and assaulted Bernard. He asked Fielteau to help him undress Bernard. Fielteau turned around, reached over the front seat, and unbuttoned and removed Bernard's blouse and bra. She held one of Bernard's legs while Mujahid held the other. Mujahid slapped Bernard several times and inserted his finger into her vagina. Mujahid said, "You want this finger or you want the other finger? You want this finger?" and Bernard responded, "I don't want none." App. at 47. Bernard tried to fight back. She passed out and subsequently awoke to feel a ripping pain in her vagina. Mujahid was on top of her. She struggled, and he eventually got off of her. She was bleeding from her vagina. Afterward, he pulled her out of the vehicle and into the water, where he threatened to drown her. The water was too deep for her

to stand up in. Mujahid forcibly had sexual intercourse with her in the water. He then drove Fielteau and Bernard back to his house. Fielteau gave Bernard a change of clothes. Bernard took a shower and spent the night in the living room. The next morning, she left the house and headed for home. Near her home, she saw her roommate Lisa Dawson and told her she had been raped.

Dr. Elena Aguas testified that on the morning of September 19, 1991, Bernard came to the emergency room claiming to have been raped. Bernard was crying and scared. She stated that she had bathed twice since being raped, and that she had no prior sexual contacts. She complained of pain "all over," which she said resulted from struggling, and of burning on urination which began only after she was raped. Her skin was tender on both wrists, hips, and legs. She would not submit to a complete pelvic examination. Dr. Aguas performed a limited pelvic examination, which revealed that the hymen was broken with minimal bleeding and that there was blood around the vulva.

Fielteau testified that she, Mujahid, and Bernard drove to the beach. Mujahid argued with Bernard and climbed into the back seat. At his request, Fielteau helped to remove Bernard's blouse and bra while he held her wrists. Fielteau left the vehicle and stood on the beach. She heard Bernard screaming. She saw that Mujahid was kneeling in the back of the vehicle with Bernard's legs over his shoulders. Mujahid "asked her which one of the finger you want," and said, "This one?" and "No, no, this too small." App. at 132. Bernard responded, "No, I don't want any." Id. Mujahid and Bernard were naked. He pulled Bernard out of the vehicle and led her into the sea. Bernard was screaming that she could not swim. They were in the water for over half an hour. Bernard was crying and was asking Mujahid to let her go. After they returned to the vehicle, Mujahid ordered Fielteau to clean up Bernard's blood, and Fielteau did so. She never saw Mujahid and Bernard have sex.

Lisa Dawson, Bernard's roommate, testified that she saw Bernard on the morning of September 19, 1991 while waiting at a bus stop. Bernard was "crying like crazy" and was wearing a different set of clothes from the night before. After Bernard told her what happened, Dawson sent her to the police.

Mujahid testified in his own defense. He denied that he ever had sex with Bernard. Fielteau told him that Bernard had accused him of making passes at her, so he drove them to the beach so they

could discuss it. He went into the back seat of the vehicle to talk to Bernard. Fielteau started fighting with Bernard and tried to strip her. Mujahid went into the water and Bernard followed him in, but they never came in contact with each other. Afterward, they drove to his house. He and Bernard were friends who went out a few times, but he never made passes at her.

On cross-examination, he admitted that he told Bernard to take her clothes off and that she was naked in the back seat of his vehicle. Although the government introduced his signed statement indicating that he told Fielteau to undress Bernard, Mujahid denied having any recollection of telling Fielteau to do so. When asked why he told Bernard to undress, he testified that Fielteau told him that she and Bernard had been nude together in his bedroom, and "the purpose of asking Mary Jo to take off her clothes was to see if what Claudette said about her being undressed in front of Claudette was true or not true." App. at 289.

Mujahid called two witnesses to attack Fielteau's credibility. Pastor Emanuel Etienne testified that Fielteau was no longer a member of his church because she had lied to him about not being married to Mujahid. Subsequently, when she asked Pastor Etienne for bail money, she told him that Mujahid was not involved in a rape. Bilal Ahmad testified that Fielteau, while asking him for bail money, told him that Bernard had made up the story of her being raped by Mujahid.

During the trial, the district court permitted the government to inform the jury of Fielteau's guilty plea. In her opening presentation, the prosecutor stated:

> The evidence will also show, and you will hear testimony from one Claudette Fielteau, who has an infant baby for the Defendant, Mujahid, and the evidence will show that Claudette Fielteau was also present at Vessup Bay when this incident took place, or when both incidents took place.
>
> The evidence will show, as Claudette will testify, that she did in fact aid Mr. Mujahid by holding the victim. Miss Fielteau will tell you that she has in fact pled guilty to a charge, and that she in exchange, she has agreed to cooperate with the Government.

App. at 15-16. During the prosecution's direct examination of Fielteau, the following exchange took place:

Q. Now, based on that incident that you just related to us, is that the incident that led to your arrest?

A. Yes, ma'am.

Q. As a result of that arrest were you charged with having committed a crime?

A. Yes, ma'am.

Q. As a result of that charge did you subsequently agree to cooperate with the Government?

A. Yes, ma'am.

Q. Now, in that agreement to cooperate, did you, in fact, plead guilty to another charge?

A. Yes, ma'am.

Q. As a result of that plea, have you been sentenced?

A. No, ma'am.

Q. Are you still awaiting sentencing?

A. Yes, ma'am.

Q. Has the Government or anyone promised you anything in terms of what type of sentence you will get?

A. No.

Q. Were you told at that time what your exposure is, what type of sentence you are looking at?

A. Yes, ma'am.

Q. As a result of that agreement to cooperate with the Government, did you also agree to testify here today truthfully as to what took place?

A. Yes, ma'am.

App. at 140-41. Mujahid's trial attorney[1] never objected to the admission of Fielteau's guilty plea, nor did he request a cautionary instruction. At the conclusion of the trial, the district court's charge to the jury included the following instruction:

In this case you heard the testimony of one witness with regard to her role in the matters which are an issue in this case. And you heard that she had entered a plea of guilty.

The disposition of one or more criminal charges by agreement between the prosecutor and the person is an appropriate part of the administration of justice. The important point is not whether or not there has been such a plea agreement. Rather,

---

[1] Mujahid has different counsel for this appeal.

the important point is whether the person who entered in an agreement is testifying truthfully, in this case.

That requires a determination by you, as jurors, of the credibility and reliability of the persons so testifying. You should apply the test of weighing the credibility and reliability of a witness which I'm going over with you, and have already gone over with you to a great extent during this charge. You should receive and weigh the testimony of any such person who has entered into such an agreement with caution and greater consideration than the testimony of other witnesses.

Thus you should consider whether the testimony may or may not be colored in such as (sic) way as to further the witness's own interest since the witness who realizes that he or she may procure freedom by incriminating another, does have a motive to falsify. After such consideration you may give the testimony of any such person such weight as you feel it deserves. You should never convict a defendant upon unsupported testimony of a person who has entered in an agreement with the Government unless you believe such unsupported evidence beyond a reasonable doubt.

In this case the Government, of course, claimed there was other evidence to support what you have heard from the witness who entered the plea agreement.

The defendant, of course, takes the opposition. Whether any evidence given by any person in that case is supported or not supported, or unsupported by other evidence, it is up to you as jurors to determine.

App. at 354–56. The jury returned verdicts of guilty against Mujahid on two counts of rape in the first degree. He was sentenced to fifteen years imprisonment on each count, to be served concurrently.

## II.

■ Mujahid argues that the district court committed reversible error by allowing the government to inform the jury of Fielteau's guilty plea without a cautionary instruction. It is well-established that a co-defendant's guilty plea is not admissible to prove the defendant's guilt. United States v. Werme, 939 F.2d 108, 113 (3d Cir. 1991), cert. denied, — U.S. —, 112 S. Ct. 1165 (1992); Bisaccia v. Attorney General of the State of N.J., 623 F.2d 307, 312 (3d Cir.),

cert. denied, 449 U.S. 1042, 101 S. Ct. 622 (1980); United States v. Toner, 173 F.2d 140, 142 (3d Cir. 1949). However, a guilty plea may be admitted for other, permissible purposes, such as bringing to the jury's attention facts bearing upon a witness' credibility. Werme, 939 F.2d at 113-14. We have held that a co-defendant's guilty plea is admissible, for example, to rebut a defense assertion that a witness was acting as a government agent when he engaged in the activities forming the basis of his guilty plea, id. at 114, to dampen anticipated attacks on the credibility of a government witness and foreclose any suggestion that the government was concealing evidence, United States v. Gambino, 926 F.2d 1355, 1363 (3d Cir.), cert. denied, — U.S. —, 111 S. Ct. 2800 (1991), and to respond to a defense attack on the credibility of a government witness, id. at 1365-66.

■ In this case, the government referred to Fielteau's guilty plea in its opening statement and elicited testimony from her regarding the plea during direct examination. The government never informed the district court of its reasons for introducing the guilty plea. Because the record lacks evidence of prosecutorial misconduct, we assume that the government had the sole legitimate motive that is possible on this record: to dampen an anticipated defense attack on Fielteau's credibility.

■■ While a co-defendant's guilty plea may be admissible on the issue of credibility, the district court must instruct the jury regarding the limited purpose for which that evidence may be used. See Bisaccia, 623 F.2d at 312; United States v. Restaino, 369 F.2d 544, 545 (3d Cir. 1966). An instruction is necessary because admission of a co-defendant's guilty plea can be extremely prejudicial to the defendant, given the natural human tendency to assume that if an aider and abettor is guilty, the principal must also be guilty. The instruction to the jury must deal precisely with the issue of how the guilty plea evidence can and cannot be used. See United States v. Newman, 490 F.2d 139, 144 (3d Cir. 1974) (generalized instruction to disregard co-defendant's guilty plea when determining the defendant's guilt was inadequate); United States v. Gullo, 502 F.2d 759, 762 n.4 (3d Cir. 1974) (same). At very least, the district court should instruct the jury that a co-defendant's guilty plea is no proof whatsoever of the defendant's guilt and must be disregarded completely when determining his guilt or innocence. Newman, 490 F.2d at 144.

The government argues that the district court gave a curative instruction to the jury. We disagree. The district court instructed the jury to be very cautious when evaluating the credibility of a witness who entered into a plea agreement because she might be motivated to lie. See App. at 355-56. The court also instructed the jury never to convict a defendant based on the unsupported testimony of such a witness unless they believe it beyond a reasonable doubt. Id. These instructions do not specifically address the evidentiary use of Fielteau's guilty plea. The jury was never informed that Fielteau's guilty plea could not be considered evidence of Mujahid's guilt. We therefore cannot regard the instruction as curative.

■■ The district court erred by allowing the jury to be informed of the guilty plea without a cautionary instruction. However, because the defendant's trial counsel failed to object or to request a cautionary instruction, we can reverse only if the district court committed plain error under Fed. R. Crim. P. 52(b). Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This rule authorizes a court of appeals to correct only particularly egregious errors that seriously affect the fairness, integrity, or public reputation of judicial proceedings. United States v. Young, 470 U.S. 1, 15, 105 S. Ct. 1038, 1046 (1985). The plain error exception is to be used sparingly, solely in circumstances in which a miscarriage of justice would otherwise result. Id. There is no rigid test for determining plain error. We consider on a case-by-case basis such factors as "the obviousness of the error, the significance of the interest protected by the rule that was violated, the seriousness of the error in the particular case, and the reputation of judicial proceedings if the error stands uncorrected—all with an eye toward preventing manifest injustice." Government of the Virgin Islands v. Smith, 949 F.2d 677, 681 (3d Cir. 1991) (quoting United States v. Thame, 846 F.2d 200, 205 (3d Cir.), cert. denied, 488 U.S. 928, 109 S. Ct. 314 (1988)).

■■ We have long recognized that admitting a co-defendant's guilty plea can jeopardize the fundamental fairness of a criminal trial because of the likelihood that the jury may impute a co-defendant's guilt to the defendant. See Toner, 173 F.2d at 142. In extreme cases, the admission of such evidence can violate a defendant's constitutional rights. See Bisaccia, 623 F.2d at 313. The limitations on guilty plea evidence therefore protect significant interests.

The government argues, however, that admission of the guilty plea in this case was not a serious error because the jury was never informed of the exact charge to which Fielteau pled guilty. We believe that the nature of the guilty plea was clear from the context in which it was introduced. During its opening presentation, the prosecution stated: "The evidence will show, as Claudette will testify, that she did in fact aid Mr. Mujahid by holding the victim. Miss Fielteau will tell you that she has in fact pled guilty to a charge . . . ." App. at 16. This statement makes it obvious that Fielteau pled guilty to a charge pertaining to her aiding Mujahid's committing a rape. During her direct examination, Fielteau testified that she was arrested, charged with a crime, and pled guilty to another charge "based on that incident that [she] just related." App. at 140. That "incident" was Mujahid's assaulting Bernard and Fielteau's helping him to undress her. The jury reasonably would have concluded that Fielteau pled guilty to aiding and abetting a rape committed by Mujahid, or some similar crime.

■ Moreover, any prejudice to Mujahid resulting from admission of the guilty plea was compounded by the lack of a curative instruction to indicate its proper use. Where the government has failed to state its reason for introducing a guilty plea and the court has failed to give a limiting instruction, a jury legitimately can presume that the purpose of the guilty plea evidence is the general one of demonstrating the defendant's guilt. See United States v. Harrell, 436 F.2d 606, 614 (5th Cir. 1970) (admission of co-defendant's guilty plea was plain error). The record suggests that the jury probably felt free to use Fielteau's guilty plea as substantive evidence of Mujahid's guilt.

The admission of Fielteau's guilty plea was a serious error, but it was not nearly as prejudicial as the error in Bisaccia, a habeas case upon which the defendant relies. In Bisaccia, the defendant was charged with conspiracy, entering with intent to steal, and larceny. The government elicited the testimony of a co-conspirator regarding his guilty plea to a charge arising out of the same conspiracy, and the district court gave no cautionary instruction. In his summation, the prosecutor stated: "Joseph Cicala *pleaded guilty* to conspiring to break, enter and commit larceny inside the Bruno home. They [the defendants] said it never happened, you see. Mr. Cicala *pleaded guilty* to something that didn't happen." 623 F.2d at 308-09,

313 (emphasis added by Bisaccia court). We held that the defendant's constitutional due process rights were violated.

 In the present case, the government informed the jury that Fielteau pled guilty to a charge involving her aiding Mujahid's alleged commission of a rape. No cautionary instruction was given. Where the co-defendant has pled guilty to a crime involving direct assistance and participation in the crime charged to the defendant, the likelihood of unfair prejudice is increased. Cf. Gambino, 926 F.2d at 1367 (admission of co-conspirator's guilty plea was not plain error, where he was not centrally involved in the conspiracy and his guilty plea was entered in a different proceeding). Unlike in Bisaccia, however, the government mentioned the guilty plea during its opening statement and during direct examination of a government witness, rather than during its summation when the guilty plea would have had the greatest impact on the jury. More importantly, the prosecutor in Bisaccia engaged in flagrant misconduct by encouraging the jury to regard the co-defendant's guilty plea as evidence of the defendant's guilt. In this case, the prosecutor did not emphasize the guilty plea and did not engage in prosecutorial misconduct. Bisaccia therefore is distinguishable because it involved a far higher degree of trial error than this case.

The seriousness of the district court's error is further diminished by the strength of the admissible evidence against Mujahid. The most significant evidence was the testimony of his alleged victim, Bernard. The defense has not pointed to, nor have we found, any evidence in the record which suggests that she was not credible. Though Bernard's testimony was the only direct evidence of rape, the government offered substantial other evidence to corroborate her testimony.

This case has a strong element of proof that is absent from most rape prosecutions: the testimony of an eyewitness. Fielteau, the eyewitness, corroborated almost every detail of the victim's story relevant to establishing guilt. Though Fielteau's testimony regarding her guilty plea was inadmissible, all of her other testimony regarding the events at the beach was admissible. Fielteau testified that she saw Mujahid climb into the back seat of the Bronco, where Bernard was seated. At his command, Fielteau helped to undress Bernard while Mujahid held her wrists. Fielteau heard Bernard screaming and overheard Mujahid ask her which of his fingers she wanted inserted into her vagina. Fielteau heard Bernard protest in

295

response. She saw Bernard's legs over his Mujahid's shoulders. She saw that Mujahid and Bernard were naked in the back seat of the vehicle. Afterward, Fielteau cleaned up Bernard's blood. These statements were consistent with Bernard's testimony that Mujahid raped her in the back seat of his vehicle. Though Fielteau did not witness penetration, she provided overwhelming circumstantial evidence that penetration occurred.

There were no semen or hair samples to show that a rape occurred, but Dr. Aguas' description of Bernard's physical injuries and emotional state on the morning of September 19, 1991 tends to show that Bernard was raped the night before.[2] In addition, Mujahid's own testimony was incriminating. He testified on direct examination that he entered the back seat of his vehicle where Bernard was seated. On cross-examination, he admitted that he told Bernard to undress and that she was naked. He also was impeached with his signed, sworn statement admitting that he told Fielteau to undress Bernard. Looking at the record as a whole, the evidence of guilt for the first rape was overwhelming.

■ The evidence of the second rape was not quite as strong, but it was sufficient to persuade us that the admission of the guilty plea could not have altered the verdict.[3] The victim testified that Mujahid pulled her into the water and raped her. Mujahid admitted that he and Bernard were in the water, though he denied touching her. Fielteau testified that she saw Mujahid pull Bernard out of the vehicle and take her into the water. They were naked. She heard Bernard screaming that she could not swim, and she heard Bernard crying and asking to be let go. Also, the testimony of Dr. Aguas and, to a lesser extent, of the roommate Dawson tends to show that Bernard was raped.

The jury was informed that Fielteau pled guilty to a charge involving her assisting Mujahid's commission of a rape, but the evidence showed that Fielteau assisted only the first rape in the vehicle. Thus, any prejudice to Mujahid resulting from the admis-

---

[2] The roommate Dawson's testimony also tends to show that Bernard was raped.

[3] We are not suggesting that there can be plain error only when the admission of a guilty plea would likely have made the difference between a guilty and not guilty verdict. It is possible that an error might be so egregious and so prejudicial that even if the evidence of guilt were overwhelming, the error would still be plain. Such a case, however, is not before us.

sion of Fielteau's guilty plea probably would have occurred mostly with respect to the first rape conviction, rather than the second one.

After reviewing the entire record, we conclude that the admission of Fielteau's guilty plea was not so egregious an error as to cause a miscarriage of justice. Even if the jury used Fielteau's guilty plea as evidence of Mujahid's guilt, we conclude that the other evidence of guilt was so strong that he would have been convicted regardless of the district court's error. We are deeply disturbed by the government's failure to inform the court of its purpose in introducing the guilty plea, and by the district court's failure to give a limiting instruction.[4] But because the admissible evidence of guilt was very strong, and because there was no evidence of deliberate prosecutorial misconduct, we conclude that the admission of the guilty plea was not so prejudicial as to be plain error.

## III.

On the facts of this case, it was not plain error for the district court to fail to give a curative instruction to the jury after the government had referred to a co-defendant's guilty plea in its opening statement and again after it had elicited testimony regarding the guilty plea in its direct examination of the co-defendant. We therefore will affirm the defendant's conviction on both counts of first degree rape.

---

[4] Because of the great potential for unfairness which can result from the admission of a co-defendant's guilty plea, we again urge the district courts, as we did in Werme, to resolve before trial all issues pertaining to the admission of guilty plea evidence. 939 F.2d at 115 n.4. If the district court had followed this procedure, many of the problems raised in this appeal would have been avoided.