NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 08-3028, 08-3931, 08-4077, 08-4316
_____

UNITED STATES OF AMERICA

V.

JOHN MICHAEL CRIM,
a/k/a Red

John Michael Crim, Appellant at No. 08-3028
_____

UNITED STATES OF AMERICA,

V.

JOHN BROWNLEE,
a/k/a J.D. Law

John Brownlee, Appellant at No. 08-3931
_____

UNITED STATES OF AMERICA

V.

ANTHONY TRIMBLE,
a/k/a Chip

Anthony Trimble, Appellant at No. 08-4077
_____

UNITED STATES OF AMERICA

V.

CONSTANCE TAYLOR,

Appellant at No. 08-4316

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Criminal Nos. 2-06-cr-00658-001, 2-06-cr-00658-002,
2-06-cr-00658-005 and 2-06-cr-00658-003)
District Judge:  The Honorable Anita B. Brody
Submitted Under Third Circuit L.A.R. 34.1(a)
September 15, 2011

BEFORE:  SLOVITER, SMITH, and NYGAARD, *Circuit Judges*

(Filed November 15, 2011)

_____

OPINION OF THE COURT

_____

NYGAARD, *Circuit Judge*

Appellant John Michael Crim co-founded a group known as the Commonwealth

Trust Company (CTC).  This firm counseled and encouraged investors to, among other

things, place income and assets into trusts so as to evade federal income taxes.  A grand

jury indicted Crim, along with Appellants John Brownlee, Constance Taylor and

Anthony Trimble, with one count of conspiracy to defraud the United States in violation

of 18 U.S.C. § 371.[1]  Appellants Crim, Brownlee and Taylor additionally were charged

with one count of corruptly endeavoring to obstruct and impede the due administration of

_____

[1] Often referred to as a "*Klein* Conspiracy,"  a conspiracy to violate this section gets its
name from the Second Circuit case of *United States v. Klein*, 247 F.2d 908 (2d Cir.
1957), and has become the generic term for a conspiracy to frustrate the government
(usually the IRS) in its lawful information gathering functions. *See, e.g., United States v.
Alston*, 77 F.3d 713, 719 n. 13 (3d Cir. 1996).

the Internal Revenue law, in violation of 26 U.S.C. § 7212(a). Appellants Taylor and Trimble were charged with a second count of violating this section.

## I. Background

Because we write primarily for the parties, who are well-acquainted with the lengthy and complex history of this case, we will relate only those facts necessary to address the issues on appeal. CTC marketed two domestic trusts and one offshore trust to its clients. Based on instructions provided by CTC, many of the firm's clients did not file federal tax returns. CTC advised its clients that they could escape paying federal income taxes by diverting their income through one of CTC's trusts. The firm also advocated transferring a client's assets into one of CTC's domestic trusts to protect the assets from IRS liens and seizures.

Crim and co-defendants Brownlee, Taylor and Trimble were convicted by a jury on all counts after a jury trial. All were sentenced to various terms of imprisonment and ordered to pay differing amounts of restitution to the IRS. Raising various issues both jointly and individually, Crim, Brownlee, Taylor and Trimble appeal their convictions and sentences. By order of March 10, 2009, we consolidated their appeals.[2]

The bulk of the issues raised by the Appellants concern the propriety of their convictions. We will begin with the various challenges to the sufficiency of the evidence.

## II. Sufficiency of the Evidence Challenges

A. <u>Sufficiency of the Evidence of Appellant Crim's conviction</u>

---

[2] We have jurisdiction over these matters pursuant to 28 U.S.C. § 1291. Additionally, we have jurisdiction to review the District Court's sentences pursuant to 18 U.S.C. § 3742.

Our inquiry is limited to determining whether the jury's verdict is permissible. *See United States v. McGill*, 964 F.2d 222, 229 (3d Cir. 1992). Appellant Crim argues that the evidence was insufficient to support his conviction at Count II for corruptly endeavoring to impede the due administration of IRS laws at a training seminar hosted by CTC in May of 2002 in Lancaster, Pennsylvania. We disagree.

Section 7212(a) provides, in part, that "[w]hoever corruptly or by force or threats of force . . . obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both. . . ." To prove a violation of § 7212(a), the Government must establish (1) corruption, force, or threat of force, and (2) an attempt to obstruct the administration of the IRS. Here, the Government's evidence is more than sufficient to permit the jury to conclude beyond a reasonable doubt that Crim violated 26 U.S.C. § 7212(a).

With respect to the first element of the offense, the Government charged Crim with corruptly attempting to interfere with the administration of the IRS. An act is "corrupt" within the meaning of Section 7212 if it is performed with the intention to secure an unlawful benefit for oneself or for another. *See, e.g., United States v. Reeves*, 752 F.2d 995, 998-99 (5th Cir.), *cert denied*, 474 U.S. 834 (1985). We note that Crim does not contest the sufficiency of the evidence against him at Count One. Therefore, Crim's recognition that the evidence was sufficient to prove that CTC was an illegal conspiracy to promote tax evasion more than establishes Crim's state of mind for the first element of a Section 7212(a) violation, which rests on the promotion of CTC to others.

4

The evidence presented at trial clearly supports the second element of the offense. The Government's evidence demonstrated, among other things, that Crim spoke and made welcoming remarks at the CTC tax evasion seminar and was present at the Lancaster session to promote and encourage CTC and its sales force. Given this evidence, the jury's verdict was permissible and we will affirm Crim's conviction at Count Two of the indictment.

B.     Sufficiency of the Evidence of Appellant Brownlee's Conviction

Appellant Brownlee argues that the evidence was insufficient to support his conviction at Count One of the indictment. He argues that there was no evidence of a shared unity of purpose or common goal between him and the other conspirators. He also argues that the jury's verdict was against the weight of the evidence. We disagree.

The Government presented sufficient evidence to support Brownlee's conviction at Count One. To prove a conspiracy to defraud the United States in violation of 18 U.S.C. 371 (Count 1), the evidence must establish the following elements beyond a reasonable doubt: (1) an agreement to defraud the United States, (2) an overt act by one of the conspirators in furtherance of that objective, and (3) any conspirator's commission of at least one overt act in furtherance of the conspiracy. *See United States v. Rankin*, 870 F.2d 109, 113 (3d Cir. 1989). "To conspire to defraud the United States means primarily to cheat the government out of property or money, but also means to interfere with or obstruct the government by deceit, craft, trickery, or at least by means that are dishonest." *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924).

The Government established that Brownlee warned clients about all-expenses paid vacations to "Club Fed" if they did not shred, burn, and separate their garbage. The evidence showed that Brownlee sent emails to Crim, Taylor and another co-defendant, Wayne Roebuck, expressing his concern about "drawing the attention of the IRS and leaving a trail." In an email to Crim, for example, Brownlee warned about having a client "who gets pinched hard by the IRS and turns into a singing canary." The evidence also revealed that Brownlee sold trusts and opinion letters to clients on behalf of CTC and received commissions for those sales. Brownlee was a frequent speaker at CTC conferences and training seminars. In sum, there was sufficient evidence to support Brownlee's conviction at Count One.

There was also sufficient evidence to support Brownlee's conviction at Count Two. Testimony revealed that Brownlee spoke about liens at CTC's training session in Lancaster. Brownlee, an attorney, specifically spoke on the topic of the "Legal Substance of Liens," which outlined a method advocated by the conspirators to make a client's assets appear valueless and not subject to taxation by the IRS. An IRS investigator also testified to a handwritten document he discovered at the Lancaster Host Hotel, the location of a CTC conference. The one-page document had the initials "J.B." and a date on it. No conference speaker besides Appellant Brownlee had the initials "J.B." These notes, the record reveals, were similar to several slides of a Power-Point presentation on liens. The investigator also testified that Brownlee often used Power-Point in his presentations. From this evidence, the jury could certainly infer that

6

Brownlee spoke at CTC's Lancaster conference about the firm's techniques of fraudulently using liens to hide assets from the IRS.[3]

Brownlee's conviction at Count Two will be affirmed.

C.    Sufficiency of the Evidence of Appellant Taylor's Convictions

Appellant Taylor argues that the evidence was insufficient to support her convictions at Counts Two and Three of the indictment. Like Crim, she does not challenge her conviction at Count One. Her argument is meritless.

The evidence established that Taylor spoke at CTC training sessions in Lancaster, Pennsylvania on several occasions. The conference agenda, for example, lists her as presenter on the subject of "The Documents." An IRS agent's testimony confirms Taylor's participation in the conference and her discussion of CTC trusts. The agenda for the Lancaster conference also listed Taylor as speaking on the topic of "Doing Business a la GDS."[4] Testimony established that during this session, Taylor instructed the CTC sales department on how to use her document service to evade the IRS. Finally, evidence

---

[3] Brownlee also claims the verdict was against the weight of the evidence. He made this argument before the District Court in a Rule 33 motion. *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). The District Court did not abuse its discretion. Rule 33 requests for a new trial "are not favored and should be granted sparingly and only in exceptional cases.'" *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (citation omitted). Although a district court can grant a Rule 33 motion if it finds the jury's verdict "contrary to the weight of evidence," it should do so "only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *Johnson*, 302 F.3d at 150 (citation omitted). Brownlee has failed to highlight any "serious danger that a miscarriage of justice ha[d] occurred." The District Court did not abuse its discretion.

[4] Taylor was involved in an aspect of this conspiracy known as "Guardian Document Services." Through GDS, Taylor provided fraudulent trust documents to CTC clients and advised those clients on how to maintain and manage CTC trusts.

established that Taylor spoke at another CTC conference in Exton, Pennsylvania about the services provided by her company.

Taylor's principal argument is that no evidence was presented about what she actually said at these conferences. Along these lines, she also argues that the Government was required to prove that someone actually filed a false tax return as a result of her speech. We are not persuaded. First, the jury heard several recordings of Taylor's speeches from other CTC conferences wherein she lectured clients on how to prevent the IRS from assessing and collecting taxes. We agree with the Government here that it was reasonable for the jury to conclude that Taylor spoke with similar purpose at the Lancaster and Exton meetings. Further, the Government does not have to prove Taylor was successful in her attempts to impede the administration of tax laws, only that she had the intent to do so, which the jury could reasonably infer from the Government's evidence in this case. *See, e.g., United States v. Bostian*, 59 F.3d 474, 479 (4th Cir. 1995).

Taylor's arguments lack merit and we will affirm her conviction at Counts Two and Three of the indictment.

### III. Evidentiary Challenges

Appellants Crim, Brownlee and Taylor challenge the District Court's admission of various pieces of evidence. We find all of the evidentiary challenges to be meritless and conclude that the District Court did not abuse its discretion.

A. Appellant Crim's challenge to the admission of excerpts of his autobiography

Appellant Crim argues that the District Court abused its discretion when it admitted certain excerpts from an autobiographical document entitled "Meet Me Half Way." At issue are eleven excerpted statements from the work, that include, for example, Crim's revocation of "any alleged authority that any Government agency might have over me," and Crim's "rescission of his signature on all United States Government documents, including his Social Security number," which he refers to as "the mark of the beast." Also admitted into evidence was his admission in the autobiography to "the use of corporations to do off-shore investments." Crim filed a motion in limine to exclude these and other statements, which the District Court denied.

The Government initially argues that this evidence was intrinsic evidence and was properly admitted as such. In *United States v. Green*, 617 F.3d 233, (3d Cir. 2010), we acknowledged that evidence is either intrinsic, and not subject to Rule 404(b), or extrinsic. Evidence is intrinsic if it directly proves the charged offense. *Id*. at 248-49. Intrinsic evidence also can consist of "uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime." *Id*. The excerpts from Crim's autobiography are not intrinsic evidence under *Green*. First, these statements do not directly prove violations of either 18 U.S.C. § 371 or I.R.C. § 7212(a). Crim's opinions on whether he, for example, had to possess a Social Security number do not directly prove elements of Count One or Count Two of the indictment. Further, the actions described in the excerpts are not uncharged acts performed contemporaneously with the actions charged in either count of the indictment. This

9

evidence was, instead, extrinsic evidence admitted, we presume, under FED.R.EVID. 404(b).[5]

We will reverse the District Court's evidentiary rulings only if its decision was "arbitrary, fanciful, or clearly unreasonable . . . where no reasonable person would adopt [its] view." *Green*, 617 F.3d at 239. To satisfy the requirements of Rule 404(b), evidence of other acts must (1) have a proper evidentiary purpose, (2) be relevant under FED.R.EVID. 402, (3) satisfy Rule 403, that is to say, not be substantially more prejudicial than probative, and (4) be accompanied by a limiting instruction when requested, instructing the jury not to use the evidence for an improper purpose. *United States v. Cross*, 308 F.3d 308. 320-21 (3d Cir. 2002) (footnote omitted). We have noted that the threshold established by Rule 404(b) is not overly high, and that almost all evidence can be admitted under it so long as it is for a purpose other than to demonstrate a defendant's bad character in order to encourage the jury to convict on the basis of a propensity to commit crime. *Green*, 617 F.3d at 248-49.

The District Court did not abuse its discretion in determining that these requirements were met. The excerpts from the autobiography were probative of Crim's intent, lack of good faith and consciousness of guilt. Indeed, in ruling on a motion filed under FED.R.CRIM.P. 33, the District Court found this same evidence "highly probative" because it "tended to negate a good faith defense" and because it indicated that Crim was on notice that the IRS Code applied to him.

---

[5] We presume as much because the District Court did not explicitly state its reasons for admitting this evidence.

10

Nor was the admission of this evidence unfairly prejudicial under Rule 403. Crim's argument on this point is disingenuous. He argues that the autobiographical excerpts portray him as an "anti-tax fanatic" and a "tax protestor," but later acknowledges that he is the "alleged leader of a quasi-tax protestor organization." The probative value of Crim's anti-government beliefs was not substantially outweighed by the danger of prejudice to him. Of course, any risk of prejudice could have been minimized by a limiting instruction. Crim, however, failed to request one.

We see no abuse of discretion in the admission of this evidence.

B.    Admission of Appellants' failure to file tax returns

Three of the Appellants, Crim, Brownlee and Taylor, argue that the District Court abused its discretion in admitting their failures to file tax returns from the years 2000 through 2003. The District Court admitted this evidence not under Rule 404(b) but as intrinsic evidence of the Government's case-in-chief.

After our decision in *Green*, we question whether this evidence was intrinsic by nature. The failure to file an income tax return does not directly prove either a violation of 18 U.S.C. § 371 or of I.R.C. § 7212(a). Furthermore, it is a bit of a stretch to find the failure to file an individual income tax return as facilitating the crimes charged. The Appellants were charged with assisting clients in obstructing the administration of tax laws and of defrauding the Government through that instruction. A failure to file a personal income tax return does not facilitate those crimes.

Although the District Court's admission of this evidence as intrinsic may have missed the mark, such error was harmless in any event because the evidence would easily

11

be admitted under Rule 404(b). The failure to file a tax return was certainly probative of their intent to defraud the Government and prevent the IRS from assessing and collecting taxes on CTC clients. This evidence was also admissible as proof of motive, intent, plan or knowledge. *See* FED.R.EVID. 404(b). Further, evidence that they failed to file a tax return was not unduly prejudicial to the Appellants, no more so than the emails, documents and audio recordings introduced at trial, all admitted with no objection from the Appellants.

The District Court's failure to give a limiting instruction does not amount to an abuse of discretion. The Government warned the jury that the Appellants were not on trial for their failure to file tax returns and that this evidence was to be considered only for the limited purpose of evaluating the Appellants' intent, plan and public statements. *See, e.g., United States v. Giraldi*, 86 F.3d 1468, 1378 (5th Cir. 1996).

C.      Admission of Evidence Concerning a Celebrity Client

Appellant Crim argues that the District Court abused its discretion in permitting the Government to elicit testimony from witnesses concerning CTC celebrity client, actor Wesley Snipes. Crim's argument on this point is meritless. The District Court did not abuse its discretion in admitting what was limited testimony regarding the tax-evading actor.[6]

D.      Admission of the Brownlee Notes

---

[6] Snipes, a film actor of some note, was convicted of the willful failure to file individual federal income tax returns for calendar years 1999, 2000, and 2001. *See United States v. Snipes*, 611 F.3d 855 (11th Cir. 2010).

Appellant Brownlee argues that the District Court abused its discretion in admitting a page of handwritten notes on hotel stationary that IRS investigators discovered at the site of one of CTC's conferences as well as a Power Point presentation. Brownlee submits that the page of handwritten notes is inadmissible hearsay. It is not. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED.R.EVID. 801(c). These notes simply relate the advice Brownlee gave CTC clients on how to create sham liens against their assets. As such, they are not declarations of an act, but instead, more akin to instructions to do something, which we have held not to be hearsay. *See, e.g., United States v. Reilly*, 33 F.3d 1396, 1410 (3d Cir. 1994). Put another way, these notes were not offered to prove the truth of the statements contained within them, but instead to prove the fact that certain instructions had been given to CTC clients. *See Anderson v. United States*, 417 U.S. 211, 220 n. 8 (1974). We dismiss outright Brownlee's challenge to the admissibility of the Power Point presentation, which was, after all, his own exhibit.

The District Court did not abuse its discretion by admitting this evidence.

### IV. Prosecutorial Misconduct

Appellant Brownlee points to three different remarks made by the prosecutor during closing argument as evidence of prosecutorial misconduct, all of which he objected to. We review for abuse of discretion a district court's ruling on a contemporaneous objection. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003).

13

These statements were not improper and the District Court did not abuse its discretion.

As we have recently explained,

> A prosecutor's comments can create reversible error if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11, (1985). Moreover, we "must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). "A finding of prosecutorial misconduct requires reversal unless the error is harmless." *Brennan*, 326 F.3d at 182. "If the error is constitutional, we will affirm [only] if we determine that the error is harmless beyond a reasonable doubt." *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000). "If the error is non-constitutional, we will affirm when it is highly probable that the error did not contribute to the judgment." *Id.* (quotation omitted).

*United States v. Lee*, 612 F.3d 170, 194 (3d Cir. 2010).

We have reviewed the prosecutor's closing argument and find it to contain nothing improper. Moreover, the specific comments in question certainly do not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The District Court did not abuse its discretion by overruling Brownlee's objections to the Government's closing argument.

V.     Request for a limiting instruction

14

Appellants Crim and Taylor maintain that the District Court erred by omitting an agreed-to instruction on the cooperating defendant's guilty pleas from its final jury charge. Neither Crim nor Taylor noticed this omission at trial. They likewise failed to object to the omission from the jury charge. We, therefore, review their argument for plain error. *United States v. Ozcelik*, 527 F.3d 88, 96 (3d Cir. 2008).

Following this Court's model instruction 4.19, the District Court instructed the jury to consider testimony of a witness who had reached a plea agreement with the Government "with care and caution." The District Court further advised that "whether or not the testimony may have been influenced by the plea agreement, grant of immunity, Government promise or any other benefit, is for you to determine." Through a clerical error, however, the second portion of the model jury instruction was omitted. That portion stated:

> You must not consider [the witness's] guilty plea as any evidence of [name of defendant]'s guilt. (His)(Her) decision to plead guilty was a personal decision about (his)(her) own guilt. Such evidence is offered only to allow you to assess the credibility of the witness; to eliminate any concern that (the defendant) (any of the defendants) has been singled out for prosecution; and to explain how the witness came to possess detailed first-hand knowledge of the events about which (he)(she) testified. You may consider (name of witness)'s guilty plea only for those purposes.

The omission of this section of the model instruction was not error, much less plain error. First, the District Court repeatedly instructed the jury to "separately consider the evidence against each defendant in each offense charged." Second, in closing argument, the Government stressed to the jurors that they "need to consider each

15

defendant separately" when determining guilt.  Third, Brownlee's counsel repeatedly

cautioned the jury to "give each one of [the defendants] separate consideration."

We recognize that admitting a co-conspirator's guilty plea can jeopardize the

fundamental fairness of a criminal trial because of the likelihood that the jury may impute

a co-conspirator's guilt to a defendant.  *See Government of the Virgin Islands v.*

*Mujahid*, 990 F.2d 111, 116 (3d Cir. 1993).   This is why a judge must instruct the jury as

to the limited purpose of such evidence.  *Id*. at 116.  Such an instruction should highlight

for the jury "how the guilty plea evidence can and cannot be used."  *Id.*

While not complete, the charge given in this case was sufficient to inform the jury

of the limited purpose for which the guilty pleas could be considered.  The guilty plea of

concern here was not used as evidence against Appellants Crim and Taylor.  There was

no error, much less a plain one, by omitting this part of the model jury instructions.

VI.  The Willful Blindness Jury Instruction

Appellant Brownlee next argues that the District Court erred by instructing the

jury on "willful blindness" because there was no evidence that he deliberately ignored

learning about CTC tax evasion schemes.  Under the willful blindness doctrine, a

defendant has knowledge of a fact if he is "aware of a high probability" of the fact and

"consciously and deliberately tried to avoid learning about this fact."  *United States v.*

*Stadtmauer*, 620 F.3d 238, 257 (3d Cir. 2010).  The District Court instructed the jury that

> When, as in this case, knowledge of a particular fact is
> essential to the offense charged, the Government may prove
> that the defendants knew of that fact if the evidence proves
> beyond a reasonable doubt that those defendants deliberately
> closed his or her eyes or that a defendant deliberately closed

16

his or her eyes to what would otherwise have been obvious to him or her.

No one can avoid responsibility for a crime by deliberately ignoring the obvious. Thus, you may find that a defendant knew the purpose of the conspiracy was to deceive or cheat the United States by impeding or impairing, obstructing or defeating the lawful functions of the IRS based on evidence which proves that defendant was aware of a high probability of this fact and the defendant consciously and deliberately tried to avoid learning about this fact.

Brownlee failed to object to this instruction, so we review for plain error. *United States v. Flores*, 454 F.3d 149, 156 (3d Cir. 2006) (reviewing for plain error where the defendant failed "to raise his objection to the willful blindness instruction at trial"). Here again, we see no error, much less a plain one.

Sufficient evidence supported this instruction. For example, throughout the trial Brownlee's counsel maintained that Brownlee was unaware of CTC's "off-shore program," while other testimony indicated Brownlee expressed concern that certain clients failed to use an off-shore mailing address. Based on this and other evidence in the record, the jury could have found that Brownlee deliberately closed his eyes to what CTC was instructing its clients to do. Therefore, the willful blindness instruction was properly given. *See, e.g., United States v. Leahy*, 455 F.3d 634, 652 (3d Cir. 2006).

Having determined that there are no errors that merit a reversal of the convictions, we turn to those issues that concern the Appellants' sentences.

VII. Challenges to the Appellants' Sentences

We review the Appellants' challenges to their sentences individually, beginning with Appellant Crim.

17

A.    Calculation of the Tax Loss.

Appellant Crim raises several challenges to the District Court's calculation of the tax loss charged against him. He argues that the loss calculated in the pre-sentence report differs from the Government's loss calculation figures, and that the District Court cannot adopt the pre-sentence report where it fails to resolve certain factual disputes. He further argues that that the audit documentation submitted by the Government relating to the tax loss does not "establish with any degree of reasonable certainty" what audit adjustments made by the IRS were not attributable to CTC. Crim concedes that he failed to object to the tax loss calculations at sentencing. We therefore review the District Court's calculations for plain error. *United States v. Williams*, 464 F.3d 443, 445 (3d Cir. 2006). We find no error here, much less a plain one.

The Government maintained that the amount of tax loss was $17,242,806.57 whereas the pre-sentence report placed the amount at $15,415,279.00. The District Court adopted the lesser figure set out in the pre-sentence report. For sentencing purposes, however, this is a distinction without a difference. Both amounts lead to the same base offense level of 26 under the advisory sentencing guidelines. *See* U.S.S.G. § 2T1.4 (tax loss table). Furthermore, the District Court adopted the pre-sentence report range of 151-188 months, reducing it to 96 months, which was the appropriate statutory maximum.

Having considered all of Crim's further arguments on this point, we find no error.

B.    Substantive Reasonableness of Brownlee's Sentence

18

Appellant Brownlee maintains that the District Court abused its discretion when imposing his sentence because it unreasonably failed to consider all of the § 3553(a) factors. Our review of the record, however, reveals a sentence imposed within reason.

The District Court sentenced Brownlee to a term of imprisonment of 78 months, a term that was substantially below the Guidelines range. Brownlee does not challenge the court's calculation of his Guidelines range, nor does he allege any procedural error during the sentencing hearing. Instead, he limits his challenge to the substantive reasonableness of the sentence imposed. We review for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. King*, 454 F.3d 187, 194 (3d Cir. 2006).

We are satisfied that Brownlee's sentence was reasonable. The District Court followed the three-step process outlined in *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). It further gave "rational and meaningful consideration [to] the factors enumerated in 18 U.S.C. § 3553(a)" as required by *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc). The District Court also took into account Brownlee's background, including the difficulties he had in his personal life as well as his extensive involvement in the conspiracy. The District Court imposed a sentence that was below the suggested advisory Guidelines range, which we find an eminently reasonable choice.

C. Challenge to Appellant Trimble's Sentence

Appellant Trimble also challenges the reasonableness of his sentence. He first argues that the Government's tax loss calculation was mere speculation and hearsay, rendering his sentence procedurally unreasonable. We reject this argument out-of-hand.

The Government's calculation met the requirements of a reasonable estimate and Trimble has pointed to no particular calculation as erroneous. *See* U.S.S.G. § 2T1.1, app. note 1.

He argues further procedural unreasonableness, maintaining that the District Court prohibited him from challenging the Government's $5.7 million loss figure attributed to him. The record reflects, however, that Trimble brought no specific challenge to this calculation and did not specifically object to the District Court's adoption of it. Here again, we are satisfied that the District Court's sentence was procedurally and substantively reasonable. As it did with the other Appellants, the District Court followed the three-step process outlined in *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). The District Court gave "rational and meaningful consideration [to] the factors enumerated in 18 U.S.C. § 3553(a)" as required by *Grier*, *supra*., including Trimble's lack of criminal history, familial situation, civic and charity involvement, contrition and character evidence. The District Court imposed a sentence that was within the suggested advisory guidelines range, which was not an abuse of its discretion.

## VIII.  Errors Requiring a Remand

The Government correctly acknowledges that problems exist with the manner in which the District Court ordered restitution against Appellants Crim and Taylor and in which it sentenced Appellant Crim. After careful review, these errors require us to vacate Appellant Crim's sentence and remand his case for resentencing. We further remand Crim and Taylor's cases for clarification of the District Court's restitution order.

A.    <u>Appellant Crim's Sentence</u>

Appellant Crim was sentenced to 96 months on both Counts One and Two of the indictment, to run concurrently. This was error.

In *United States v. Ward*, 626 F.3d 179 (3d Cir. 2010), we held that a District Court commits procedural error when it sentences a defendant to an individual sentence on all counts, rather than sentencing him separately on each count of an indictment. We explained that such a sentence is inconsistent with U.S.S.G. § 5G1.2 and prevents us from determining whether the sentence is legal as to a particular count. *Id*. at 184.

In light of our decision in *Ward*, we will vacate Crim's sentence and remand this matter to the District Court with instructions for it to impose sentence on each count.

B.    Restitution Orders

Under the Mandatory Victims Restitution Act, (MVRA), "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately unless . . . the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1). This statute also mandates that the sentencing order include a payment schedule in consideration of the defendant's economic circumstances. *See* 18 U.S.C. § 3664(f)(2), *see also, United States v. Coates*, 178 F.3d 681, 684 (1999). Failure to do so constitutes plain error. *United States v. Corley*, 500 F.3d 210, 227 (3d Cir. 2007).

Here, as the Government concedes and Appellants Crim and Taylor point out, the District Court ordered restitution in the amount of $17,242,306.57 from Appellant Crim and $3, 300,000.00 from Appellant Taylor, but the record reveals the District Court's

21

failure to take into account their financial resources and a failure to state on the record the manner and schedule of payments. The District Court's sentencing orders are also silent on these matters, but for the amount of restitution ordered and that restitution is to be made immediately.

It was plain error, therefore, for the District Court to order restitution without taking into account Crim and Taylor's financial resources and without stating, on the record, the manner, method and schedule of payments. We will, therefore, vacate the District Court's orders of restitution in those appeals and remand those matters to the District Court so that it may specify the amount of restitution and the method, manner and schedule of payments, after taking into account the financial resources of each Appellant.

## IX.     Conclusion

We will affirm the convictions of Appellants Crim, Brownlee and Taylor. We affirm the sentences given Appellants Brownlee, Taylor and Trimble. We will vacate Appellant Crim's sentence and remand for resentencing. We will also vacate the award of restitution entered against Appellants Crim and Taylor and will remand to the District Court for clarification.